UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAROL M. SCHUNK a/k/a
CAROL M. DEARBORN,

                    Plaintiff,        11-CV-0670T

        v.                      **DECISION**
                                   **and ORDER**

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                    Defendant.

---

## INTRODUCTION

Plaintiff Carol M. Schunk, a/k/a Carol M. Dearborn ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##25, 27.

## BACKGROUND

On June 18, 2008, Plaintiff filed a DIB application alleging disability beginning August 29, 2007, due to back injury, high

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

blood pressure, anxiety, depression, and fibromyalgia. T. 143-46, 178. Plaintiff's initial application was denied, and she subsequently requested a hearing before an Administrative Law Judge ("ALJ"). T. 56-59, 62-63. A video hearing was held before ALJ David S. Pang on September 27, 2010, during which Plaintiff testified and was represented by counsel. The ALJ also heard testimony from a Vocational Expert ("VE"). T. 37-54. Afterward, the  ALJ issued a written decision on October 15, 2010, finding that Plaintiff was disabled as of October 5, 2010, but not prior thereto. T. 19-39.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 29, 2007; (2) she had the severe impairments of degenerative disc disease, hypertension, adjustment disorder, and pain disorder; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appendix 1, and that she retained the residual functional capacity ("RFC") to perform sedentary work with a sit/stand option and limitations in climbing, kneeling, crouching, and crawling; (4) she was unable to perform her past relevant work; and (5) prior to October 5, 2010, Plaintiff was able to perform jobs that existed in significant numbers in the national

economy. At step five, the ALJ further found that beginning October 5, 2010 (the date that Plaintiff's age category changed to that of an individual closely approaching advanced age), there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. T. 26-32. He then concluded that Plaintiff was not disabled prior to October 5, 2010. T. 32.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 23, 2011. T. 1-6. This action followed. Dkt.#1.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's RFC was supported by substantial evidence; the ALJ properly assessed Plaintiff's credibility; and that substantial evidence supports the ALJ's finding that Plaintiff was not disabled prior to October 5, 2010. Comm'r Mem. (Dkt. #25-1) 17-26. Plaintiff cross-moves for judgment on the pleadings on the grounds that the ALJ erred at various of the sequential analysis. Gaughan Decl. (Dkt. #27) 1-6.[2]

For the following reasons, the Commissioner's motion is granted, and the Plaintiff's cross-motion is denied.

---

[2] In lieu of a memorandum of law, Plaintiff's counsel, Dennis Gaughan, Esq., submits an Affirmation Declaration ("Gaughan Decl.") in support of her motion. Dkt. #27.

**DISCUSSION**

## I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits

the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. Medical Evidence

### A. Treatment Records from the alleged onset date, August 29, 2007, through October 4, 2010.

An MRI of Plaintiff's lumbar spine taken on September 6, 2007 showed moderate L2-3 and L3-4 disc bulging, mild L4-5 disc bulging, broad-based left foraminal to left posterolateral disc herniation superimposed on disc bulging at L2-3 and mild-to-moderate left L2-3 neural foramen narrowing. T. 287.

At the time of her DIB application, Plaintiff took 8 medications, including hydrocodone, Lyrica, Fentanyl patches, Xanax, a beta-blocker, and a diuretic. T. 182, 310.

Beginning September 5, 2007, and various times thereafter, Plaintiff's primary care physician Pricilla Dale opined that Plaintiff was disabled and unable to work. T. 238, 362, 366, 368, 444, 447, 451.

On September 18, 2007, Plaintiff was examined by neurosurgeon Loubert Suddaby, who noted Plaintiff's consumption of narcotic analgesics for pain had increased and that Plaintiff was seeking other treatment options. T. 242. Dr. Suddaby's examination of Plaintiff revealed that she was well-nourished, well-developed, and in no acute distress; was alert, oriented, and exhibited normal mentation. She had moderate to marked restriction in her lumbar spine range of motion and tenderness of the lumbar paraspinal muscles; no tenderness of the sacroiliac joints or hip bursae; and tenderness present in the sciatic notches bilaterally. Straight leg raising was 80 degrees bilaterally; reflexes were symmetrical; plantars were downgoing; muscle bulk, tone, and power were normal as was a sensory examination. Gait and station were normal. T. 242. Dr. Suddaby noted the previous MRI results and recommended a lumbar spine CT scan, return to physical therapy, and an epidural nerve block. He stated that he was concerned about Plaintiff's narcotic consumption, and advised against narcotic use for chronic pain in

light of her existing addiction to nicotine. T. 243.  Dr. Suddaby opined that Plaintiff had a "problem with bulging of the discs at multiple levels with associated spinal stenosis," and stated that she would remain on temporary, total disability. T. 243.

Shortly thereafter, Dr. Dale again examined Plaintiff, noting that she had shuffling gait and moved stiffly. T. 241. She planned to keep Plaintiff off work until further notice. Id.

Plaintiff saw Dr. Melvin Brothman, an orthopedic surgeon, on October 29, 2007 for complaints of lower back pain that radiated to her legs. T. 244-47. She reported that her pain was aggravated by bending, lifting, walking, standing, and sitting. After examination and reviewing the diagnostic imaging tests results, Dr. Brothman diagnosed Plaintiff with spinal stenosis with bilateral radiculopathy, degenerative disc disease multiple levels. He noted that Plaintiff's primary care physician, Dr. Dale, had diagnosed her with fibromyalgia. T. 244. Her prognosis was fair. Dr. Brothman opined that her treatment to date treatment was reasonable and necessary, and she was able to return to work, but was to avoid excessive bending or lifting over 15 to 20 pounds. He recommended further treatment, noting that a CT scan and epidural blocks would be reasonable. T. 246.

Plaintiff next saw Dr. Dale on December 14, 2007, for follow up of fibromyalgia, anxiety, depression, and elevated blood pressure. T. 255, 257. A physical examination was unremarkable. T.

255. Dr. Dale diagnosed Plaintiff with severe anxiety depressive disorder aggravated by a Workmen's Comp injury, and added that Plaintiff had active fibromyalgia, some osteoarthritis in her spine, and degenerative disc disease. T. 255. One month later, Plaintiff showed difficulty rising from a chair and reported "some good days and some bad days." T. 254. Dr. Dale assessed exacerbation of spinal pain, probably due to a herniated disc, and refilled Plaintiff's prescription medications. Id.

Plaintiff saw Dr. Suddaby again for ongoing back pain on January 29, 2008. Upon examination, Plaintiff had a moderate restriction in her lumbar spine range of motion and tenderness of the lumbar paraspinal muscles. An epidural nerve block, therapy, a discogram, and a pain management physician were recommended. T. 292. Dr. Suddaby opined that Plaintiff was temporarily, totally disabled. Id.

Plaintiff returned to Dr. Dale one month later, stating that the epidural helped for a week and a half, and that her back felt better. Her examination was unremarkable. Plaintiff was advised to see Dr. Suddaby regarding another epidural. T. 253.

A physical examination by Dr. Suddaby on March 18, 2008, was essentially unchanged. T. 291. A repeat epidural was recommended, and Plaintiff's disability status on that date was "temporary total." Id. She visited Dr. Suddaby again on June 12, August 14, and November 20, 2008. During these visits, Plaintiff exhibited

moderate restrictions in the lumbar spine, and her condition remained unchanged. Dr. Suddaby assessed temporary, total disability, and continued to recommend pain management and home exercises. T. 237, 349, 432. Plaintiff told Dr. Suddaby in November, 2008, that she wanted to avoid surgery. T. 432. Though Dr. Suddaby repeatedly advised Plaintiff to receive a discogram and undergo physical therapy, Plaintiff did not follow-up on those procedures. T. 185, 235, 238, 240, 244, 290, 294, 298.

Plaintiff continued to see her primary care physician Dr. Dale between June 26, 2008 and October 21, 2009, during which time her condition remained unchanged. T. 238, 353, 437, 438, 440, 442, 444, 446, 448. Plaintiff continued to complain of being unable to sit, stand, or walk for any length of time. She moved stiffly upon evaluation, although many of her examination results were normal, and she exhibited no acute distress. Id. Dr. Dale refilled Plaintiff's prescription medications, including Fentanyl patches for pain relief. T. 238. Plaintiff received trigger point injections on November 11, 2008 for her back pain, and told Dr. Dale that they helped somewhat. T. 351, 432.

Dr. Dale noted that as of January, 2009, Plaintiff's pain was controlled with medications and injections. However, Dr. Dale noted concerns about Plaintiff "over-taking" her medication. T. 238, 353. Due to Plaintiff's need to change positions, Dr. Dale opined that Plaintiff could not perform sedentary work, and had disabling back

pain. T. 438. Though her back condition was stable, it was not improving. T. 440. Vocational rehabilitation was recommended. T. 442. By July 30, 2009, Plaintiff's functional limitations remained the same, and Dr. Dale opined that she was unable to work in any setting. T. 444.

### III. <u>Non-Medical Evidence</u>

Plaintiff was born in 1960 and had an 11th grade education. T. 47, 147. She lived at home with her husband. T. 186. Her last job was at Tops Markets, where she worked as a meat clerk for 20 years. That position required her to carry up to 80 pounds at a time. T. 42-43. When she stopped working on August 29, 2007, due to back and body pain, she was unable to sit or stand for more than 30 minutes. T. 43, 178. Plaintiff testified that Tops did not have any light duty work available for her when she stopped working. T 43. Beginning in August, 2007, she received Worker's Compensation. T. 48.

Plaintiff told the ALJ that she was unable to perform housecleaning or grocery shopping, and that she would perform light housekeeping and lay on a heating pad most of the day. T. 44, 48. She took 8 or 9 medications, all of which made her drowsy. T. 44-46. Her husband drove her to the hearing. T. 46. Though Dr. Suddaby recommended surgery, Plaintiff felt she was too young and declined. T. 47. Unless she took her medication, she was unable to get out of bed. T. 48.

The ALJ also heard testimony from VE Alina Kurtanich, to whom he posed a hypothetical regarding an individual of Plaintiff's age, work experience, and education, who could perform light work with the following limitations: (1) a sit/stand option at the workstation; (2) never climbing ladders, ropes, or scaffolds; (3) occasionally climbing ramps or stairs; (4) occasionally stooping, kneeling, crouching, or crawling; and (5) avoiding concentrated exposure to unprotected heights and heavy moving machinery. T.  T. 49-50.  The VE responded that such an individual could not perform Plaintiff's past work, but could perform work as a ticket taker or garment sorter. T. 50.

The ALJ posed a second hypothetical that involved the same facts with the exertional level reduced to sedentary. T. 50.  In response, the VE stated that the jobs of surveillance system monitor, ticket checker, and document preparer existed in significant numbers in the national economy. T. 50.

Finally, the VE testified that if the hypothetical individual would be off-task for 20 percent of the workday due to medication side effects, there would be no jobs available to that individual. T. 51.

IV.  **The Decision of the Commissioner that Plaintiff was not disabled prior to October 5, 2010, is supported by substantial evidence.**

A.    **Step Two Finding: Severity of Impairment**

Plaintiff contends that the ALJ was incorrect in disputing her alleged daignosis of fibromylagia and not finding it to be a severe impairment. Gaughan Decl. 5.

For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.9249(c). It must also be "medically determinable," established through medically acceptable clinical or laboratory diagnostic techniques demonstrating the existence of a medical impairment. Skiver v. Colvin, No. 12-CV-899, 2014 WL 800228, *6 (W.D.N.Y. Feb.28, 2014); 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the individual's statement of symptoms. 20 C.F.R. § 416.908.

Here, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, adjustment disorder, and pain disorder. T. 26. In so finding, he noted that there were no medical signs or laboratory findings to support a conclusion that Dr. Dale's diagnosis was a medically determinable impairment under the regulations. Id. The ALJ further pointed out that Plaintiff's trigger points were not documented in the record,

12

no tenderness in the back was noted in her treatment notes from 2008 and 2009, and no clinical findings were present in the record to support the diagnosis. Id.

The Court is cognizant that rejecting a fibromyalgia-claimant's allegation of disability based in part on a perceived lack of objective evidence has been held to be reversible error. See Grenier v. Colvin, No. 13-cv-484, 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014). Nonetheless, a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 Fed. Appx.  20, 22 (2d Cir. 2008). Accordingly, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment. Social Security Ruling ("SSR") 99-2p, 1999 WL 271569 (1999).

The ALJ in this case specifically applied SSR 99-2p in reaching his finding. The Court further notes that the absence of the evidence mentioned above is especially significant here, where the Plaintiff has substantial and thorough medical records from a longstanding treating physician. To the contrary, the only evidence

in support of Plaintiff's allegation appears to be Dr. Dale's passing references to an undated diagnosis of fibromyalgia in her various treatment notes. T. 255, 260-62.

For these reasons the ALJ's finding at step two of the sequential analysis was supported by substantial evidence.

**B.   Treating Source Opinion**

Plaintiff next contends that the ALJ failed to address the opinions of her treating physicians that she was totally disabled. Gaughan Decl. 3-4.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

The Court adds that the Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

On the outset, Plaintiff's contention that the ALJ "fail[ed] to address the reiteration of the finding of disability" by Plaintiff's treating sources is belied by the decision. Gaughan Decl. 3. ALJ Pang discussed the opinions from Plaintiff's primary sources, Dr. Dale and Dr. Suddaby, and specifically acknowledged that each has "consistently" and "repeatedly" opined that Plaintiff was completely or totally disabled. T. 30. He went on to state, however, that those opinions were conclusory because they were not a function-by-function assessment of Plaintiff's abilities or limitations, which would be required for a determination of disability under the Act. Id. Further, the ALJ noted that these physicians had an "extensive history" with Plaintiff, and in fact agreed with their assessments to a certain extent. Their opinions of whether Plaintiff was disabled was ultimately afforded "some, very limited weight" by the ALJ. Id.

More importantly, the determination of whether an individual is disabled is unequivocally a matter reserved for the

Commissioner. <u>See</u> <u>Taylor v. Barnhart</u>, 83 Fed.Appx. 347 at 349 (2d Cir.2003) (treating physician's opinion that claimant is "temporarily totally disabled" is entitled to no weight, because the ultimate issue is reserved solely for the Commissioner) (citing 20 C.F.R. § 404.1527(e)(1)) (unpublished opinion). The ALJ therefore did not err in affording those opinions "little" weight.

Moreover, the opinions of Drs. Dale and Suddaby on the issue of disability were rendered in the context of Worker's Compensation, which invokes a different standard of disability than the standard under the Act for social security purposes. <u>See</u> <u>Rosado v. Shalala</u>, 868 F.Supp. 471, 473 (E.D.N.Y. 1994) (citing <u>Coria v. Heckler</u>, 750 F.2d 245, 247 (3d Cir. 1984) ("[T]he standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.")); <u>accord</u>, <u>Crowe v. Comm'r</u>, No. 01–CV–1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because the opinions were rendered in the context of the plaintiff's Worker's Compensation claim).

Here, the ALJ applied the appropriate legal standards when he considered the full record and properly evaluated Plaintiff's

treating source opinions. His determination was therefore based upon substantial evidence.

### C.   Plaintiff's Credibility

Plaintiff also challenges the ALJ's credibility determination in her motion for judgment on the pleadings. Gaughan Decl. 6.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and

render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible to the extent they were inconsistent with the residual functional capacity assessment. T. 28.

In addition to the objective medical and clinical findings, which did not support the extent of Plaintiff's subjective complaints, the ALJ considered also Plaintiff's history of prescription medication usage, her preference to receive conservative treatment (as opposed to recommended surgical intervention), and her failure to undergo physical therapy and to schedule her approved discogram to further determine an appropriate course of treatment. T. 29. He also viewed her strong work history

18

and limited daily activities as supporting her allegation that she was no longer able to work. Id. The ALJ properly considered the factors set forth at SSR 96-7p. Thus, despite using the frowned-upon boilerplate language in his decision, the ALJ's credibility determination was nonetheless supported by substantial evidence. See Diakogianis v. Astrue, 975 F.Supp.2d 299, 318-19 (W.D.N.Y. 2013) (determining the ALJ's credibility assessment was supported by substantial evidence where the ALJ assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite the use of the boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity"); Luther v. Colvin, No. 12-CV-6466, 2013 WL 3816540, at *7-8 (W.D.N.Y. July 22, 2013) (finding ALJ properly assessed plaintiff's credibility despite boilerplate language in opinion that plaintiff's alleged symptoms were "inconsistent with the above residual functional capacity"); Abdulsalam v. Comm'r, No. 12-CV-1632, 2014 WL 420465, at *7 (N.D.N.Y. Feb. 4, 2014) ("this erroneous boilerplate language does not merit remand if the ALJ offers specific reasons to disbelieve the claimant's testimony") (internal quotation omitted).

The Court therefore finds that the ALJ's credibility determination was proper as a matter of law and supported by substantial evidence in the record.

**D.    Step Five Finding: VE Testimony**

Plaintiff challenges the ALJ's determination at step five on the basis that the VE testified that jobs existed in the national economy, but "fail[ed] to state the number of jobs available in the Western New York economy." Gaughan Decl. 2-3.

The controlling statutes and federal regulations suggest that the proper focus generally must be on jobs in the national, not regional, economy. In 42 U.S.C. § 423(d)(2)(A), for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if ... [he cannot] engage in any other kind of substantial gainful work which exists in the <u>national economy,</u> <u>regardless of whether such work exists in the immediate area</u> .... '[w]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." <u>Id.</u> (emphasis added); <u>see also</u> 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy.").

Likewise, district courts in this Circuit have held that a purported failure in this regard does not warrant remand. <u>See</u> <u>Updike v. Colvin</u>, No. 12-CV-6506, 2014 WL 2435613, *11-12 (W.D.N.Y. May 30, 2014) (rejecting claimant's challenge to ALJ's step five determination on the grounds that vocational expert provided only

20

national and statewide numbers; "a claimant's inability to obtain such work, the unavailability of work in the claimant's local area, or the unavailability of job openings, among others, do not constitute grounds for a disability finding") (internal quotation omitted); Colon v. Comm'r, No. 00-CV-0556, 2004 WL 1144059, *8 (N.D.N.Y. Mar. 22, 2004) (rejecting claimant's contention that remand was warranted because vocational expert's testimony established significant number of jobs in national economy, but failed to establish significant jobs in regional economy; "[a]lthough [claimant] argues that those jobs are unavailable in the regional economy, the truth of that assertion is irrelevant because it fails to consider the proper legal standard"); Kemp v. Comm'r, No. 10-CV-1244, 2011 WL 3876526, *13 (N.D.N.Y.) (ALJ properly relied upon number of jobs in national economy at step five where vocational expert provided testimony concerning number of jobs in national economy and state of Connecticut where claimant originally filed claim, despite absence of testimony concerning the number of jobs in New York state where claimant had moved), report and recommendation adopted, 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011).

Finally, the Court notes that no evidence has been proffered at any stage of the proceedings to rebut the ALJ's conclusion that the jobs stated by the VE existed in significant numbers in the

national economy. The step five determination, therefore, was not legally erroneous or unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Comissioner's motion for judgment on the pleadings (Dkt.#25) is granted, and Plaintiff's cross-motion for judgment on the pleadings (Dkt.#27) is denied. The ALJ's finding that Plaintiff was not disabled prior to October 5, 2010 within the meaning of the Act is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           February 4, 2015